## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLARK LEIPS, derivatively on behalf MINDSPEED TECHNOLOGIES, INC., | ) ) ) |
| Plaintiff, | ) ) Civil Action No. ) |
| vs. | ) ) |
| RAOUF Y. HALIM, MICHAEL T. HAYASHI, MING LOUIE, THOMAS A. MADDEN, JERRE L. STEAD, ROBERT J. CONRAD and  DWIGHT W. DECKER, | ) ) ) ) **JURY TRIAL DEMANDED** |
| Defendants, | ) ) |
| -and- | ) ) |
| MINDSPEED TECHNOLOGIES, INC., a Delaware Corporation, | ) ) ) |
| Nominal Defendant. | ) ) ) ) |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Clark Leips ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

1.       Plaintiff asserts this action for breach of fiduciary duties and waste of corporate assets derivatively on behalf of Mindspeed Technologies, Inc. ("Mindspeed" or the "Company") against the Company's Board of Directors (the "Board") for exceeding its authority under the Company's shareholder-approved 2003 Long-Term Incentives Plan (the "Incentive Plan").

2.      In particular, the Incentive Plan, which provides for the granting of equity awards to the Company's officers and employees, limits the amount of awards that could be granted to any individual participant within any one calendar year.

3.      As described in more detail below, in each year from 2009 through 2011, the Board granted the Company's Chief Executive Officer, Raouf Y. Halim ("Halim") awards in excess of the shareholder-approved limit.

4.      As a result of the above misconduct, the Company and its shareholders have been harmed.

5.      The excess awards granted to Halim are *ultra vires* and should be rescinded.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states (and foreign states) and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  Plaintiff is a citizen of Costa Rica and no defendant is a citizen of Costa Rica.

7.      This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8.      Venue is proper in this district because nominal defendant Mindspeed is incorporated in this district.

## THE PARTIES

9.      Plaintiff is a shareholder of Mindspeed and has been a shareholder of Mindspeed during the period of the alleged wrongdoing.  Plaintiff is a citizen of Costa Rica.

10.     Nominal party Mindspeed is a Delaware corporation with its principal place of business at 4000 MacArthur Boulevard East Tower, Newport Beach, California 92660.

Mindspeed designs, develops and sells semiconductor solutions for communications applications in wireless and wireline network infrastructure markets. Mindspeed was originally incorporated in Delaware in 2001 as a wholly owned subsidiary of Conexant Systems, Inc. ("Conexant"). The Company spun-off from Conexant in June of 2003.

11.     Defendant Halim has been the Company's Chief Executive Officer since June 2003, and a director of the Company since January 2002. He was the Senior Vice President and Chief Executive Officer of the Internet infrastructure business of Conexant from February 2002 to June 2003 and the Senior Vice President and General Manager, Network Access Division, of Conexant from January 1999 to February 2002. Halim is a resident of the state of California.

12.     Defendant Dwight Y. Decker ("Decker") has been a non-executive Chairman of the Board since June 2003 and a director of the Company since January 2002.  Decker served as the chief executive officer of Conexant from January 1999 to February 2004 and again from November 2004 to July 2007. He also served as the Chairman of the Board of Conexant from January 1999 to July 2008, and as a member of the board of directors of Conexant from August 2008 to May 2010. Decker is a resident of the state of California.

13.     Defendant Robert J. Conrad ("Conrad") has been a director of the Company since August 18, 2010 and was a member of the Compensation and Management Development Committee (the "Compensation Committee") during the time the November 2010, and 2011 awards challenged herein were granted.  Conrad is a resident of the state of California.

14.     Defendant Jerre L. Stead ("Stead") has been a director of the Company since June 2003, and was the Chairman of the Compensation Committee during all times relevant herein. Stead was also a director of Conexant from 1998 to 2011. Stead is a resident of the state of California.

15.     Defendant Michael T. Hayashi ("Hayashi") has been a director of the Company since August 2005, and was a member of the Compensation Committee during all times relevant herein. Hayashi is a resident of the state of Colorado.

16.     Defendant Ming Louie ("Louie") has been a director of the Company since June 2003. Louie is a resident of the state of California.

17.     Defendant Thomas A. Madden ("Madden") has been a director of the Company since June 2003, and was a member of the Compensation Committee during the 2009 calendar year, and remained a member up until August 18, 2010. Madden is a resident of the state of California.

18.     Defendants listed in ¶¶ 11-17 are hereinafter collectively referred to as the "Defendants" or the "Board." All references to the "Compensation Committee" refer to defendants Stead, Hayashi, and Madden for grants that occurred prior to August 18, 2010, and to defendants Stead, Hayashi, and Conrad for all grants that occurred after that date.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *The Incentive Plan*

19.     In 2003, the Incentive Plan was adopted by Mindspeed's Board of Directors and approved by the Company's shareholders. The Incentive Plan provides for the grant of stock options, unrestricted stock, restricted stock, restricted stock units and other stock-based awards to officers and employees of the Company.

20.     On January 29, 2009, Mindspeed's Board of Directors filed a Schedule 14A Proxy Statement (the "2009 Proxy"), in connection with the Company's 2009 annual meeting. In the Proxy, the Board sought, among other things, re-approval of the Incentive Plan with certain

amendments, and recommended that shareholders vote to reapprove the amended version of the

Incentive Plan. The Company's shareholders reapproved the Incentive Plan on March 10, 2009.

21.     The Incentive Plan, as approved by the Company's shareholders on March 10,

2009, limits the amount of awards that an individual participant can receive during a calendar

year. As stated in Section 5 of the Incentive Plan:

> No single Participant shall receive, in any one calendar year, Awards which
> exceed (i) options (whether Non-Qualified Stock Options or Incentive Stock
> Options) with respect to 180,000 (one hundred eighty thousand) shares of Stock,
> (ii) 50,000 (fifty thousand) shares of Restricted Stock and Restricted Stock Units
> (to the extent settled in Stock) or (iii) 50,000 (fifty thousand) shares of
> Unrestricted Stock, in each case subject to adjustment as set forth in Section 9.

22.     On February 18, 2011, the Board filed a Schedule 14A Proxy Statement (the 2011

Proxy") in connection with the Company's 2011 annual meeting. In the 2011 Proxy, the Board

sought, among other things, certain amendments to the Incentive Plan, and recommended that

Mindspeed's shareholders vote to reapprove the amended version of the Incentive Plan. On April

5, 2011, at the 2011 annual meeting, Mindspeed's shareholders approved the amended version of

the Incentive Plan.

23.     The Incentive Plan as approved by Mindspeed's shareholders on April 8, 2011,

limits the amount of awards that an individual participant can receive in any one calendar year to

300,000 shares. As stated in Section 5:

> No single Participant shall receive, in any one calendar year, Awards (whether
> Non-Qualified Stock Options Incentive Stock Options, Restricted Stock,
> Restricted Stock Units (to the extent settled in Stock), SARs (to the extent settled
> in Stock) or Unrestricted Stock) with underlying shares of Stock exceeding three
> hundred thousand (300,000) shares of Stock, subject to adjustment as set forth in
> Section 9.

### The Administration of the Incentive Plan

24.     The Incentive Plan is administered by the Board's Compensation Committee, which during the time of the awards challenged herein consisted of Defendants Stead, Hayashi, and Madden through August 18, 2010, and Defendants Stead, Hayashi, and Conrad thereafter.

25.     Each Board member was aware of the calendar year limits in the Incentive Plan. Each Board member, with the exception of Conrad (who was not a Board member at the time), recommended re-approval of the Incentive Plan in the 2009 Proxy, and each Board member recommended re-approval of the Incentive Plan in the 2011 Proxy.

26.     While the Compensation Committee grants awards under the Incentive Plan, it reports its actions to the Board. As stated in the Compensation and Management Development Committee Charter: "The Committee shall report its action and recommendations to the Board after each Committee meeting . . . .'"

27.     As described below, in 2009, 2010, and 2011, the Board exceeded its authority under the Incentive Plan by authorizing, approving, and/or by abdication of duty, permitting grants to Halim in excess of the calendar year limit.

### The 2009 Awards

28.     On April 30, 2009, the Compensation Committee granted 180,000 stock options and 50,000 shares of restricted stock to Halim (*see* the Form 4 the Company filed with the SEC on May 4, 2009).

29.     These awards were granted under the Incentive Plan. As stated in the Schedule 14A Proxy Statement filed with the SEC on January 29, 2010 (the "2010 Proxy"):

> Our long-term compensation consists of both stock option and restricted stock awards provided under our 2003 long-term incentive plan . . . .
>
> In April 2009, we granted stock options to our named executive officers, as well as to many of our other employees. In April 2009, we also granted shares of

restricted stock to a limited number of executive officers, including our named executive officers.

30.     On November 20, 2009, the Compensation Committee granted 60,000 stock options and 30,000 shares of restricted stock to Halim under the Incentive Plan (*see* the Form 4 the Company filed with the SEC on November 24, 2009).

31.     As stated in the 2011 Proxy:

Our long-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan.. . . .

In November 2009, we granted stock options and shares of restricted stock to our named executive officers.

32.     Thus, for the 2009 calendar year, Halim received 240,000 stock options and 80,000 shares of restricted stock under the Incentive Plan.

33.     As described above, the Incentive Plan, as approved by Mindspeed shareholders on March 10, 2009, provided in clear, unambiguous terms, that no individual may be granted more than 180,000 stock options, or 50,000 shares of restricted stock in one calendar year.

34.     By granting Halim 240,000 stock options and 80,000 shares of restricted stock under the Incentive Plan during 2009, the Board exceeded their authority under the Incentive Plan.

35.     Consequently, the 60,000 stock options and 30,000 shares of restricted stock awarded to Halim on November 20, 2009 are *ultra vires* and should be rescinded.

### *The 2010 Awards*

36.     On March 10, 2010, the Compensation Committee granted Halim 150,000 shares of restricted stock and 150,000 shares of unrestricted performance stock under the Incentive Plan (see the Form 4 the Company filed with the SEC on March 12, 2010).

37.     As stated in the 2011 Proxy:

Our long-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan . . . .

. . . . In March 2010, we granted shares of restricted stock to our named executive officers.

In March 2010, we also granted awards of unrestricted performance stock to certain named executive officers, with vesting subject to satisfaction of specific performance conditions.

38.     On November 5, 2010, the Compensation Committee granted Halim an additional 15,000 shares of restricted stock under the Incentive Plan. As stated in a Definitive 14A Proxy Statement filed with the SEC on December 21, 2011 (the "2012 Proxy"):

Our long-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan . . . .

In November 2010, we granted stock options and shares of restricted stock to our named executive officers, which vested as to 33.33% of the underlying awards in November 2011 and quarterly thereafter.

39.     Thus, for the 2010 calendar year, Halim received 165,000 shares of restricted stock and 150,000 shares of unrestricted stock under the Incentive Plan.

40.     As described above, the Incentive Plan, as approved by the Company's shareholders in March 2009, provided in clear, unambiguous terms, that no individual may be granted more than 50,000 shares of restricted stock, or 50,000 shares of unrestricted stock in one calendar year.

41.     By granting Halim, 165,000 shares of restricted stock and 150,000 shares of unrestricted stock under the Incentive Plan, the Board exceeded its authority under the Incentive Plan.

42.     Consequently, the 115,000 shares of restricted stock and 100,000 shares of unrestricted stock granted to Halim in excess of the express limitations of the Incentive Plan are *ultra vires* and should be rescinded.

*The 2011 Awards*

43.     On April 6, 2011 the Compensation Committee granted Halim 135,000 shares of restricted stock. On April 28, 2011, the Compensation Committee granted Halim 90,000 stock options. On July 19, 2011, the Compensation Committee granted Halim 300,000 shares of restricted stock. These awards were granted under the Incentive Plan. As stated in the 2012 Proxy:

> Our long-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan . . . .
>
> . . . In April and May of 2011, we granted stock options and shares of restricted stock to our named executive officers, which vest as to 33.33% of the underlying awards in April 2012 and quarterly thereafter. In July 2011, we granted shares of restricted stock to our named executive officers, which vested as to 12.5% of the underlying award in October 2011 and quarterly thereafter.

44.     Thus, for the 2011 calendar year, Halim received awards covering 525,000 shares under the Incentive Plan.

45.     As described above, the Incentive Plan, as approved by the Company's shareholders on April 5, 2011, provides in clear, unambiguous terms, that no individual may be granted awards covering more than 300,000 shares in one calendar year.

46.     As a result, 225,000 shares of the restricted stock granted to Halim on July 19, 2011 were granted in violation of the Incentive Plan.  By granting Halim awards covering 525,000 shares under the Incentive Plan, the Board exceeded its authority under the Incentive Plan.

47.     Consequently, 225,000 shares of restricted stock granted to Halim on July 19, 2011 are *ultra vires* and should be rescinded.

## DEMAND FUTILITY ALLEGATIONS

48.     Plaintiff brings this action derivatively on behalf of Mindspeed to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.

49.     Plaintiff has owned Mindspeed stock continuously during the time of the wrongful course of conduct alleged herein and continues to hold Mindspeed stock.

50.     Plaintiff will adequately and fairly represent the interests of Mindspeed in enforcing and prosecuting its rights and has retained counsel competent and experienced in shareholder derivative litigation.

51.     At the time of this filing the Board consists of the following seven (7) directors: Halim, Decker, Conrad, Hayashi, Louie, Madden, and Stead. Each member of the Board has been named as a Defendant in this action.

52.     Plaintiff did not make a demand on the Board prior to instituting this Action. A pre-suit demand upon the Board is futile for several reasons.

53.     The Board (by granting, authorizing and/or by abdication of duty permitting grants to Halim) violated an express, unambiguous provision of the shareholder-approved Incentive Plan. Thus, the facts raise doubt that the Board's actions resulted from a valid exercise of business judgment. In addition, as a result of these actions, the Board faces a substantial likelihood of liability and therefore is incapable of objectively considering demand here. Accordingly, demand is excused.

54.     Stead, Hayashi and Madden were members of the Compensation Committee during the time of the November 2009, and March 2010 grants, while Stead, Hayashi and Conrad were members of the Compensation Committee during the time of the November 2010 grants

and the 2011 grants. The Compensation Committee's actions, in granting these awards in violation of the terms of the Incentive Plan, could not have been a good faith exercise of business judgment. In addition, as a result of their actions, Defendants Stead, Hayashi, Conrad and Madden face a substantial likelihood of liability and therefore are incapable of objectively considering a demand here. Accordingly, demand as to Stead, Hayashi, Conrad and Madden is excused.

55.      In addition, Defendant Halim is incapable of considering a demand in this Action because he is neither disinterested nor independent. Halim received the awards challenged herein, and thus has a strong financial incentive to maintain the status quo by not authorizing any corrective action because it could force him to disgorge the improperly obtained awards. This creates an unacceptable conflict that restricts him from evaluating this action independently. In addition, Halim has served as the Company's CEO since 2003 and receives substantial compensation as a result of his employment with the Company. Because of his dependence on the Company for his employment and continued compensation, he is beholden to the Company and lacks sufficient independence with which to render a disinterested decision on whether to pursue the derivative claims. Indeed, the 2012 Proxy acknowledges that Halim does not qualify as an "independent" director within the meaning of the NASDAQ listing standards.

56.      Defendants Decker and Stead are incapable of considering a demand in this Action because they share a long-time relationship with Halim, and are unable to consider this matter independently. Halim was the Senior Vice President and Chief Executive Officer of the Internet infrastructure business of Conexant from February 2002 to June 2003 and the Senior Vice President and General Manager, Network Access Division, of Conexant from January 1999 to February 2002. During this time, Stead was also a director of Conexant, serving from 1998 to

2011. Also during this time, Decker was involved with Conexant in two capacities, serving as chief executive officer from January 1999 to February 2004 and the Chairman of the Board from January 1999 to July 2008. As a result of these close ties with Halim that stretch back for over a decade, Decker and Steadwould be unable impartially to assess this matter and would be unlikely to authorize any corrective action that could force the disgorgement of Halim's improperly obtained awards. As a result, demand with regard to Decker and Stead is excused.

## COUNT I
### Breach of Fiduciary Duty
### (Against Defendants)

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     As officers and/or directors of the Company, each of the Defendants owed the Company and its shareholders the fiduciary obligations of loyalty, candor, good faith, and due care.

59.     In authorizing, approving, and/or by abdication of duty permitting the granting of awards in violation of the terms of the Incentive Plan, the Defendants exceeded their authority under the Incentive Plan and did not act in good faith toward the Company, and thus, breached their fiduciary duties under Delaware law.

60.     These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests, but rather lined the pockets of Halim at the expense of and to the detriment of the Company.

61.     Halim breached his fiduciary duties to the Company by accepting grants in violation of the Incentive Plan for his own personal benefit to the detriment and expense of the Company.  Accordingly, Halim breached his fiduciary duty of loyalty and good faith.

62.     As a result of Defendants' actions, the Company has been and will be damaged.

63.     Plaintiff and the Company have no adequate remedy at law.

## COUNT II
### Waste of Corporate Assets
### (Against the Defendants)

64.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65.     The Defendants have caused and will cause the Company to waste valuable corporate assets by granting Halim awards in excess of what was authorized under the Incentive Plan.

66.     By granting Halim awards in excess of the amount allowed under the Incentive Plan from 2009-2011, Defendants granted Halim awards that no director of ordinary sound business judgment would award, so as to constitute waste.

67.     As a result of this waste of corporate assets, the Defendants are liable to the Company.

## COUNT III
### Unjust Enrichment
### (Against Halim)

68.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

69.     Halim received unauthorized personal financial benefits as a result of the awards challenged herein.

70.     It would be unconscionable and against fundamental principles of justice, equity, and good conscience for Halim to retain the benefits of the awards that were granted in express violation of the Incentive Plan.

71.     Halim has been unjustly enriched at the expense of, and to the detriment of, the Company.

72.     Accordingly, this Court should order Halim to disgorge the grants awarded in excess of the applicable calendar year limit in the Incentive Plan for the years 2009-2011.

73.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     A declaration that the awards granted to Halim in 2009-2011 in excess of the applicable calendar per-year limit was *ultra vires* and not authorized by the Incentive Plan;

A.     Rescission of the excess grants awarded to Halim;

B.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets, and violation of the Incentive Plan, plus pre-judgment and post-judgment interest;

C.     Equitable and/or injunctive relief as necessary or permitted by law and equity, including disgorgement, attachment, impoundment, and/or imposition of a constructive trust on or otherwise restricting the disposition/exercise of the challenged grants discussed herein;

D.     Directing Mindspeed to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and policies and to protect the Company and its shareholders from a recurrence of the damaging events described herein;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

F.      Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: January 2, 2013

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com

*Of Counsel*:

LEVI & KORSINSKY, LLP
Eduard Korsinsky
Steven J. Purcell
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff*