## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLARK LEIPS, derivatively on behalf MINDSPEED TECHNOLOGIES, INC. and individually on behalf of himself and all other similarly situated shareholders of MINDSPEED TECHNOLOGIES, INC., | ) ) ) ) ) ) | Civil Action No. 13-cv-15-SLR |
| Plaintiff, | ) ) ) | **CLASS ACTION** |
| vs. | ) ) ) | |
| RAOUF Y. HALIM, MICHAEL T. HAYASHI, MING LOUIE, THOMAS A. MADDEN, JERRE L. STEAD, ROBERT J. CONRAD and DWIGHT W. DECKER, | ) ) ) ) ) | <u>**JURY TRIAL DEMANDED**</u> |
| Defendants, | ) ) ) | |
| -and- | ) ) | |
| MINDSPEED TECHNOLOGIES, INC., a Delaware Corporation, | ) ) ) ) | |
| Nominal Defendant. | ) ) | |

## VERIFIED AMENDED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT

Plaintiff Clark Leips ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

1.      Plaintiff asserts this action for breach of fiduciary duties and waste of corporate assets derivatively on behalf of Mindspeed Technologies, Inc. ("Mindspeed" or the "Company") against the Company's Board of Directors (the "Board") for exceeding its authority under the

1

Company's shareholder-approved 2003 Long-Term Incentives Plan (the "Incentive Plan"). Plaintiff also asserts this action on behalf of himself and the public stockholders of Mindspeed entitled to vote at the Company's 2013 annual meeting (the "2013 Annual Meeting"), a direct claim against the Board for breaching their fiduciary duties in connection with a false and misleading proxy statement filed by the Board.

2.     In particular, the Incentive Plan, which provides for the granting of equity awards to the Company's officers and employees, limits the amount of awards that could be granted to any individual participant within any one calendar year.

3.     As described in more detail below, in each year from 2009 through 2012, the Board granted the Company's Chief Executive Officer, Raouf Y. Halim ("Halim") awards in excess of the shareholder-approved limit.  The excess awards granted to Halim are *ultra vires* and should be rescinded.

4.     Additionally, on January 3, 2013 the Board filed a Schedule 14A Proxy Statement with the United States Securities and Exchange Commission ("SEC") (the "2013 Proxy") in connection with the 2013 Annual Meeting of Stockholders scheduled for February 12, 2013 (the "2013 Annual Meeting"). In the 2013 Proxy, the Board is soliciting shareholder approval for, among other things, the re-election of two of the Company's directors (both of whom are on the Board's Compensation Committee) and the approval of a 2013 equity incentive plan intended to replace the Incentive Plan.  However, the 2013 Proxy contains materially false and misleading statements and material omissions that render shareholders unable to make informed decisions at the 2013 Annual Meeting.

5.     As a result of the above misconduct, the Company and its shareholders have been, and will be, harmed.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states (and foreign states) and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  Plaintiff is a citizen of Costa Rica and no defendant is a citizen of Costa Rica.

7.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8.     Venue is proper in this district because nominal defendant Mindspeed is incorporated in this district.

## THE PARTIES

9.     Plaintiff is a shareholder of Mindspeed and has been a shareholder of Mindspeed during the period of the alleged wrongdoing.  Plaintiff is a citizen of Costa Rica.

10.     Nominal party Mindspeed is a Delaware corporation with its principal place of business at 4000 MacArthur Boulevard East Tower, Newport Beach, California, 92660. Mindspeed designs, develops and sells semiconductor solutions for communications applications in wireless and wireline network infrastructure markets. Mindspeed was originally incorporated in Delaware in 2001 as a wholly owned subsidiary of Conexant Systems, Inc. ("Conexant"). The Company spun-off from Conexant in June of 2003.

11.     Defendant Halim has been the Company's Chief Executive Officer since June 2003, and a director of the Company since January 2002. He was the Senior Vice President and Chief Executive Officer of the Internet infrastructure business of Conexant from February 2002

to June 2003 and the Senior Vice President and General Manager, Network Access Division, of Conexant from January 1999 to February 2002. Halim is a resident of the state of California.

12.     Defendant Dwight Y. Decker ("Decker") has been a non-executive Chairman of the Board since June 2003 and a director of the Company since January 2002.  Decker served as the chief executive officer of Conexant from January 1999 to February 2004 and again from November 2004 to July 2007. He also served as Conexant's Chairman of the Board of from January 1999 to July 2008, and as a member of Conexant's board of directors from August 2008 to May 2010. Decker is a resident of the state of California.

13.     Defendant Robert J. Conrad ("Conrad") has been a director of the Company since August 18, 2010 and was a member of the Compensation and Management Development Committee (the "Compensation Committee") during the time the November 2010, and 2011 awards challenged herein were granted.  Conrad is a resident of the state of California.

14.     Defendant Jerre L. Stead ("Stead") has been a director of the Company since June 2003, and was the Chairman of the Compensation Committee during all times relevant herein. Stead was also a Conexant director from 1998 to 2011. Stead is a resident of the state of California.

15.     Defendant Michael T. Hayashi ("Hayashi") has been a director of the Company since August 2005, and was a member of the Compensation Committee during all times relevant herein. Hayashi is a resident of the state of Colorado.

16.     Defendant Ming Louie ("Louie") has been a director of the Company since June 2003. Louie is a resident of the state of California.

17.     Defendant Thomas A. Madden ("Madden") has been a director of the Company since June 2003, and was a member of the Compensation Committee during the 2009 calendar

year, and remained a member up until August 18, 2010. Madden is a resident of the state of California.

18.    Defendants listed in ¶¶ 11-17 are hereinafter collectively referred to as the "Defendants" or the "Board." All references to the "Compensation Committee" refer to defendants Stead, Hayashi, and Madden for grants that occurred prior to August 18, 2010, and to defendants Stead, Hayashi, and Conrad for all grants that occurred after that date.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *The Incentive Plan*

19.    In 2003, the Incentive Plan was adopted by Mindspeed's Board of Directors and approved by the Company's shareholders. The Incentive Plan provides for the grant of stock options, unrestricted stock, restricted stock, restricted stock units and other stock-based awards to officers and employees of the Company.

20.    On January 29, 2009, Mindspeed's Board of Directors filed a Schedule 14A Proxy Statement (the "2009 Proxy"), in connection with the Company's 2009 annual meeting. In the Proxy, the Board sought, among other things, re-approval of the Incentive Plan with certain amendments, and recommended that shareholders vote to reapprove the amended version of the Incentive Plan. The Company's shareholders reapproved the Incentive Plan on March 10, 2009.

21.    The Incentive Plan, as approved by the Company's shareholders on March 10, 2009, limits the amount of awards that an individual participant can receive during a calendar year. As stated in Section 5 of the Incentive Plan:

> No single Participant shall receive, in any one calendar year, Awards which exceed (i) options (whether Non-Qualified Stock Options or Incentive Stock Options) with respect to 180,000 (one hundred eighty thousand) shares of Stock, (ii) 50,000 (fifty thousand) shares of Restricted Stock and Restricted Stock Units (to the extent settled in Stock) or (iii) 50,000 (fifty thousand) shares of Unrestricted Stock, in each case subject to adjustment as set forth in Section 9.

22.     On February 18, 2011, the Board filed a Schedule 14A Proxy Statement (the 2011 Proxy") in connection with the Company's 2011 annual meeting. In the 2011 Proxy, the Board sought, among other things, certain amendments to the Incentive Plan, and recommended that Mindspeed's shareholders vote to reapprove the amended version of the Incentive Plan. On April 5, 2011, at the 2011 annual meeting, Mindspeed's shareholders approved the amended version of the Incentive Plan.

23.     The Incentive Plan as approved by Mindspeed's shareholders on April 5, 2011, limits the amount of awards that an individual participant can receive in any one calendar year to 300,000 shares. As stated in Section 5:

> No single Participant shall receive, in any one calendar year, Awards (whether Non-Qualified Stock Options Incentive Stock Options, Restricted Stock, Restricted Stock Units (to the extent settled in Stock), SARs (to the extent settled in Stock) or Unrestricted Stock) with underlying shares of Stock exceeding three hundred thousand (300,000) shares of Stock, subject to adjustment as set forth in Section 9.

### The Administration of the Incentive Plan

24.     The Incentive Plan is administered by the Board's Compensation Committee, which during the time of the awards challenged herein consisted of Defendants Stead, Hayashi, and Madden through August 18, 2010, and Defendants Stead, Hayashi, and Conrad thereafter.

25.     Each Board member was aware of the calendar year limits in the Incentive Plan. Each Board member, with the exception of Conrad (who was not a Board member at the time), recommended re-approval of the Incentive Plan in the 2009 Proxy, and each Board member recommended re-approval of the Incentive Plan in the 2011 Proxy.

26.     While the Compensation Committee grants awards under the Incentive Plan, it reports its actions to the Board. As stated in the Compensation and Management Development

Committee Charter: "The Committee shall report its action and recommendations to the Board after each Committee meeting . . . .""

27.     As described below, in 2009, 2010, 2011, and 2012 the Board exceeded its authority under the Incentive Plan by authorizing, approving, and/or by abdication of duty, permitting grants to Halim in excess of the calendar year limit.

### The 2009 Awards

28.     On April 30, 2009, the Compensation Committee granted 180,000 stock options and 50,000 shares of restricted stock to Halim (*see* the Form 4 filed with the SEC on May 4, 2009).

29.     These awards were granted under the Incentive Plan. As stated in the Schedule 14A Proxy Statement filed with the SEC on January 29, 2010 (the "2010 Proxy"):

> Our long-term compensation consists of both stock option and restricted stock awards provided under our 2003 long-term incentive plan . . . .

> In April 2009, we granted stock options to our named executive officers, as well as to many of our other employees. In April 2009, we also granted shares of restricted stock to a limited number of executive officers, including our named executive officers.

30.     On November 20, 2009, the Compensation Committee granted 60,000 stock options and 30,000 shares of restricted stock to Halim under the Incentive Plan (*see* the Form 4 filed with the SEC on November 24, 2009).

31.     As stated in the 2011 Proxy:

> Our long-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan.. . . .

> In November 2009, we granted stock options and shares of restricted stock to our named executive officers.

32.     Thus, for the 2009 calendar year, Halim received 240,000 stock options and 80,000 shares of restricted stock under the Incentive Plan.

33.     As described above, the Incentive Plan, as approved by Mindspeed shareholders on March 10, 2009, provided in clear, unambiguous terms, that no individual may be granted more than 180,000 stock options, or 50,000 shares of restricted stock in one calendar year.

34.     By granting Halim 240,000 stock options and 80,000 shares of restricted stock under the Incentive Plan during 2009, the Board exceeded their authority under the Incentive Plan.

35.     Consequently, the 60,000 stock options and 30,000 shares of restricted stock awarded to Halim on November 20, 2009 are *ultra vires* and should be rescinded.

### The 2010 Awards

36.     On March 10, 2010, the Compensation Committee granted Halim 150,000 shares of restricted stock and 150,000 shares of unrestricted performance stock under the Incentive Plan (see the Form 4 filed with the SEC on March 12, 2010).

37.     As stated in the 2011 Proxy:

Our long-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan . . . .

. . . . In March 2010, we granted shares of restricted stock to our named executive officers.

In March 2010, we also granted awards of unrestricted performance stock to certain named executive officers, with vesting subject to satisfaction of specific performance conditions.

38.     On November 5, 2010, the Compensation Committee granted Halim an additional 15,000 shares of restricted stock under the Incentive Plan. As stated in a Definitive 14A Proxy Statement filed with the SEC on December 21, 2011 (the "2012 Proxy"):

Our long-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan . . . .

In November 2010, we granted stock options and shares of restricted stock to our named executive officers, which vested as to 33.33% of the underlying awards in November 2011 and quarterly thereafter.

39.     Thus, for the 2010 calendar year, Halim received 165,000 shares of restricted stock and 150,000 shares of unrestricted stock under the Incentive Plan.

40.     As described above, the Incentive Plan, as approved by the Company's shareholders in March 2009, provided in clear, unambiguous terms, that no individual may be granted more than 50,000 shares of restricted stock, or 50,000 shares of unrestricted stock in one calendar year.

41.     By granting Halim, 165,000 shares of restricted stock and 150,000 shares of unrestricted stock under the Incentive Plan, the Board exceeded its authority under the Incentive Plan.

42.     Consequently, the 115,000 shares of restricted stock and 100,000 shares of unrestricted stock granted to Halim in excess of the express limitations of the Incentive Plan are *ultra vires* and should be rescinded.

### The 2011 Awards

43.     On April 6, 2011, the Compensation Committee granted Halim 135,000 shares of restricted stock. On April 28, 2011, the Compensation Committee granted Halim 90,000 stock options. On July 19, 2011, the Compensation Committee granted Halim 300,000 shares of restricted stock. These awards were granted under the Incentive Plan. As stated in the 2012 Proxy:

Our long-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan . . . .

. . . In April and May of 2011, we granted stock options and shares of restricted stock to our named executive officers, which vest as to 33.33% of the underlying awards in April 2012 and quarterly thereafter. In July 2011, we granted shares of restricted stock to our named executive officers, which vested as to 12.5% of the underlying award in October 2011 and quarterly thereafter.

44.     Thus, for the 2011 calendar year, Halim received awards covering 525,000 shares under the Incentive Plan.

45.     As described above, the Incentive Plan, as approved by the Company's shareholders on April 5, 2011, provides in clear, unambiguous terms, that no individual may be granted awards covering more than 300,000 shares in one calendar year.

46.     As a result, 225,000 shares of the restricted stock granted to Halim on July 19, 2011 were granted in violation of the Incentive Plan.  By granting Halim awards covering 525,000 shares under the Incentive Plan, the Board exceeded its authority under the Incentive Plan.

47.     Consequently, 225,000 shares of restricted stock granted to Halim on July 19, 2011 are *ultra vires* and should be rescinded.

### The 2012 Awards

48.     On January 31, 2012, the Compensation Committee granted Halim 259,200 shares of restricted stock. On February 10, 2012, the Compensation Committee granted Halim 108,216 stock options. These awards were granted under the Incentive Plan. As stated in the 2013 Proxy:

Our long-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan . . . .

. . . In January and February 2012, we granted shares of restricted stock and stock options to our named executive officers, which vest as to 33.33% of the underlying awards in January and February 2013, respectively, and quarterly thereafter.

49.     Thus, for the 2012 calendar year, Halim received awards covering 367,416 shares under the Incentive Plan.

50.     As described above, the Incentive Plan, as approved by the Company's shareholders on April 5, 2011, provides in clear, unambiguous terms, that no individual may be granted awards covering more than 300,000 shares in one calendar year.

51.     As a result, 67,416 of the stock options granted to Halim on February 10, 2012 were granted in violation of the Incentive Plan.  By granting Halim awards covering 367,416 shares under the Incentive Plan, the Board exceeded its authority under the Incentive Plan.

52.     Consequently, 67,416 of the stock options granted to Halim on February 10, 2012 are *ultra vires* and should be rescinded.

### The 2013 Proxy is False and Misleading

53.     On January 3, 2013, the Board filed the 2013 Proxy in connection with the 2013 Annual Meeting, scheduled for February 12, 2013. In the 2013 Proxy, the Board is soliciting shareholder approval for, among other things, the re-election of defendants Stead and Conrad for a three-year term.

54.     As required, the 2013 Proxy describes, among other things, the Company's executive compensation policies and programs, the executive compensation decisions made by the Board and the Compensation Committee in connection with the Company's 2012 fiscal year, and the amount and form of compensation received by the Company's named executive officers during each of the past three years.

55.     However, in this discussion, the 2013 Proxy fails to disclose that during each of the past three years, defendant Halim has been granted more shares than allowed under the shareholder-approved Incentive Plan.  Indeed, when discussing the long-term compensation of

11

the Company's named executive officers, the 2013 Proxy leads shareholders to believe that the Board and Compensation Committee have acted in compliance with the Incentive Plan: "[L]ong-term compensation generally consists of both stock option and restricted stock awards provided under our 2003 long-term incentives plan."

56.     Truthful and complete disclosure regarding the Board's repeated violations of the Incentive Plan is material information because a reasonable shareholder would consider it important in determining whether to re-elect Stead and Conrad for another three-year term. Indeed, since he was elected to the Board in 2010, Stead has served as Chairman of the Compensation Committee during each of the past three years. Conrad has served on the Compensation Committee since his appointment to the Board in August 2010.  Accordingly, both Stead and Conrad were central players in the unauthorized equity grants made to Halim discussed above, and truthful and complete disclosure of this information is important for shareholders in determining whether Stead and Conrad can and will faithfully comply with their fiduciary duties to the Company.

57.     In the 2013 Proxy, the Board is also soliciting shareholder approval of the 2013 Equity Incentive Plan (the "2013 Plan"). If shareholders approve the 2013 Plan, it will replace the Incentive Plan, which is set to expire in 2013.  Subject to certain adjustments, stockholders are being asked to approve an additional 4.6 million shares of Mindspeed common stock for issuance under the 2013 Plan (plus any shares subject to stock options, restricted stock units or similar awards granted under the Company's prior plans that expire or otherwise terminate without having been vested or exercised in full).

58.     The 2013 Proxy describes the annual grant limits as follows:

The equity incentive plan contains annual grant limits intended to satisfy Section 162(m). Specifically, the maximum number of shares and/or dollars which

could be issued to any one individual in any fiscal year pursuant to the plan is set forth below:

| Award Type | Annual Number of Shares or Dollar Value |
| --- | --- |
| Stock Option | 1,500,000 |
| Stock Appreciation Right | 1,500,000 |
| Restricted Stock | 600,000 |
| Restricted Stock Units | 600,000 |
| Performance Shares | 600,000 |
| Performance Units | Initial Value of $2,000,000 |

The 2013 Proxy fails to disclose that these limits are substantially greater than the 300,000 award limit stipulated in the Incentive Plan. Certainly shareholders would want to know that the Board is seeking to substantially increase the current annual limit, a limit that the Board has already violated in the past four years.

59.     Similarly, in considering whether to approve a new incentive plan that will authorize the Board to issue an additional 4.6 million shares, it is important for shareholders to know that the Board consistently has granted more shares than allowed under the Incentive Plan in each of the past four years.  Indeed, in determining to reserve 4.6 million additional shares for issuance, the 2013 Proxy states that the Board considered the fact that its "three-year average 'burn rate' of 8.3% is above the three-year average industry guideline of 6.58% as recommended by ISS" but attributed the high burn-rate to "the need to retain key technical and engineering employees." The 2013 Proxy states that the Board "commit[s] that [Mindspeed's] future three-year average burn rate will be in alignment with industry guidelines recommended by ISS." Certainly, it is material for shareholders to know, in deciding whether to provide the Board with authority to issue an additional 4.6 million shares, and in deciding whether to believe the Board' commitment to keep the burn-rate low, that the Board has shown no regard for its obligation to comply with the terms of the Incentive Plan in the past.

60.     Accordingly, by failing to provide shareholders with this information, the 2013 Proxy is materially misleading thereby preventing shareholders from casting an informed vote regarding the important decisions facing them at the 2013 Annual Meeting.

61.     As a result, because the upcoming election of directors Stead and Conrad as well as the upcoming vote on the 2013 Plan are scheduled to occur at the 2013 Annual Meeting, that meeting should be enjoined until the Board amends the 2013 Proxy to remedy the materially false and misleading statements and material omissions described above.

## DEMAND FUTILITY ALLEGATIONS

62.     Plaintiff brings this action derivatively on behalf of Mindspeed to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.

63.     Plaintiff has owned Mindspeed stock continuously during the time of the wrongful course of conduct alleged herein and continues to hold Mindspeed stock.

64.     Plaintiff will adequately and fairly represent the interests of Mindspeed in enforcing and prosecuting its rights and has retained counsel competent and experienced in shareholder derivative litigation.

65.     At the time of this filing the Board consists of the following seven (7) directors: Halim, Decker, Conrad, Hayashi, Louie, Madden, and Stead. Each member of the Board has been named as a Defendant in this action.

66.     Plaintiff did not make a demand on the Board prior to instituting this Action. A pre-suit demand upon the Board is futile for several reasons.

67.     The Board (by granting, authorizing and/or by abdication of duty permitting grants to Halim) violated an express, unambiguous provision of the shareholder-approved

Incentive Plan. Thus, the facts raise doubt that the Board's actions resulted from a valid exercise of business judgment. In addition, as a result of these actions, the Board faces a substantial likelihood of liability and therefore is incapable of objectively considering demand here. Accordingly, demand is excused.

68.     Stead, Hayashi and Madden were members of the Compensation Committee during the time of the November 2009 and March 2010 grants, while Stead, Hayashi and Conrad were members of the Compensation Committee during the time of the November 2010 grants, the 2011 grants, and the 2012 grants. The Compensation Committee's actions, in granting these awards in violation of the terms of the Incentive Plan, could not have been a good faith exercise of business judgment. In addition, as a result of their actions, Defendants Stead, Hayashi, Conrad and Madden face a substantial likelihood of liability and therefore are incapable of objectively considering a demand here. Accordingly, demand as to Stead, Hayashi, Conrad and Madden is excused.

69.     In addition, Defendant Halim is incapable of considering a demand in this action because he is neither disinterested nor independent. Halim received the awards challenged herein, and thus has a strong financial incentive to maintain the status quo by not authorizing any corrective action because it could force him to disgorge the improperly obtained awards. This creates an unacceptable conflict that restricts him from evaluating this action independently. Moreover, the 2013 Proxy concedes that Halim does not qualify as an "independent" director within the meaning of the NASDAQ listing standards.

70.     Defendants Decker and Stead are incapable of considering a demand in this Action because they share a long-time relationship with Halim, and are unable to consider this matter independently.  Halim was the Senior Vice President and Chief Executive Officer of the

Internet infrastructure business of Conexant from February 2002 to June 2003 and the Senior Vice President and General Manager, Network Access Division, of Conexant from January 1999 to February 2002. During this time, Stead was also a director of Conexant, serving from 1998 to 2011.  Also during this time, Decker was involved with Conexant in two capacities, serving as chief executive officer from January 1999 to February 2004 and Chairman of the Board from January 1999 to July 2008. As a result of these close ties with Halim that stretch back for over a decade, Decker and Stead would be unable impartially to assess this matter and would be unlikely to authorize any corrective action that could force the disgorgement of Halim's improperly obtained awards. As a result, demand with regard to Decker and Stead is excused.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of owners of Mindspeed common stock as of December 17, 2012, the record date for the determination of shareholders entitled to vote at the 2013 Annual Meeting (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

72.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the 2013 Proxy, as of December 17, 2012, there were over 42 million shares of common stock outstanding. All members of the Class may be identified from records maintained by Mindspeed or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

73.     Questions of law and fact are common to the Class, including, *inter alia*, the following:

    a.  Have the Individual Defendants breached their fiduciary duties by filing the false and misleading 2013 Proxy; and

    b.  Whether Plaintiff and the other members of the Class would be irreparably harmed if the 2013 Annual Meeting was held without any of the corrective actions described herein.

74.     Plaintiff's claims are typical of the claims of the other members of the class. Plaintiff is committed to prosecuting this action, will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

75.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

76.     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

77.     Defendants have acted on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the Class as a whole.

**<u>COUNT I</u>**
**Breach of Fiduciary Duty**
**(Against Defendants)**

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     As officers and/or directors of the Company, each of the Defendants owed the Company and its shareholders the fiduciary obligations of loyalty, candor, good faith, and due care.

80.     In authorizing, approving, and/or by abdication of duty permitting the granting of awards in violation of the terms of the Incentive Plan, the Defendants exceeded their authority under the Incentive Plan, did not act in good faith toward the Company and thus breached their fiduciary duties under Delaware law.

81.     These actions were not a good faith exercise of business judgment to protect and promote the Company's corporate interests, but rather lined the pockets of Halim at the expense and to the detriment of the Company.

82.     Halim breached his fiduciary duties to the Company by accepting grants in violation of the Incentive Plan for his own personal benefit to the detriment and expense of the Company. Accordingly, Halim breached his fiduciary duty of loyalty and good faith.

83.     As a result of Defendants' actions, the Company has been and will be damaged.

84.     Plaintiff and the Company have no adequate remedy at law.

## COUNT II
### Waste of Corporate Assets
### (Against Defendants)

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     The Defendants have caused and will cause the Company to waste valuable corporate assets by granting Halim awards in excess of what was authorized under the Incentive Plan.

87.    By granting Halim awards in excess of the amount allowed under the Incentive Plan from 2009-2012, Defendants granted Halim awards that no director of ordinary sound business judgment would award, so as to constitute waste.

88.    As a result of this waste of corporate assets, the Defendants are liable to the Company.

**COUNT III**
**Unjust Enrichment**
**(Against Halim)**

89.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

90.    Halim received unauthorized personal financial benefits as a result of the awards challenged herein.

91.    It would be unconscionable and against fundamental principles of justice, equity, and good conscience for Halim to retain the benefits of the awards that were granted in plain violation of the Incentive Plan.

92.    Halim has been unjustly enriched at the expense and to the detriment of the Company.

93.    Accordingly, this Court should order Halim to disgorge the grants awarded in excess of the applicable calendar year limit in the Incentive Plan for the years 2009-2012.

94.    Plaintiff has no adequate remedy at law.

**COUNT IV**
**Breach of Fiduciary Duty of Candor In Connection With The 2013 Proxy**
**(Direct Claim Against Defendants)**

95.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     The fiduciary duties of the Individual Defendants require them to be completely truthful with the Company's shareholders and disclose all information material to the decisions confronting Mindspeed's shareholders at the 2013 Annual Meeting.

97.     As set forth above, the Individual Defendants have breached their fiduciary duty by filing and seeking shareholder action on the basis of the materially false and misleading 2013 Proxy.

98.     As a result, Plaintiff and Class members are being harmed irreparably.

99.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.      A declaration that the awards granted to Halim in 2009-2012 in excess of the applicable annual limit was *ultra vires* and not authorized by the Incentive Plan;

B.      Rescission of the excess grants awarded to Halim;

C.      As to Count IV, declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

D.      Enjoining, preliminarily and permanently, the 2013 Annual Meeting unless, and until, the corrective action described above is taken;

E.      Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets, and violation of the Incentive Plan, plus pre-judgment and post-judgment interest;

     F.     Equitable and/or injunctive relief as necessary or permitted by law and equity, including disgorgement, attachment, impoundment, and/or imposition of a constructive trust on or otherwise restricting the disposition/exercise of the challenged grants discussed herein;

     G.     Directing Mindspeed to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with the Plan, applicable laws and policies, and to protect the Company and its shareholders from a recurrence of the damaging events described herein;

     H.     Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

     I.     Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Respectfully submitted,

Dated:     January 9, 2013            FARNAN LLP


                                  /s/ Brian E. Farnan
                                  Brian E. Farnan (Bar No. 4089)
                                  Michael J. Farnan (Bar No. 5165)
                                  919 N. Market Street, 12th Floor
                                  Wilmington, DE  19801
                                  Telephone:  (302) 777-0300
                                  Facsimile:  (302) 777-0301
                                  bfarnan@farnanlaw.com
                                  mfarnan@farnanlaw.com

*Of Counsel:*

LEVI & KORSINSKY LLP
Eduard Korsinsky
Steven J. Purcell
30 Broad Street, 24th Floor

21

New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171